**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br> John E. Covington,<br><br> Debtor. | Case No. 22bk02427<br>Chapter 7<br>Judge LaShonda A. Hunt |
| John E. Covington,<br><br> Plaintiff,<br><br>v.<br><br>Illinois American Water Company,<br><br> Defendant. | Adv. Pro. No. 22ap00134 |

**MEMORANDUM OPINION**

This matter is before the Court for a ruling on damages following a civil contempt finding against respondent/defendant Illinois American Water Company ("ILAW") for violating the discharge injunction entered in the bankruptcy case. *Pro se* plaintiff/debtor John Covington ("Mr. Covington") filed a two-count adversary complaint against ILAW alleging that the company continued to engage in collection activity of past-due water bills after he filed for bankruptcy and after entry of the discharge order. Subsequently, Mr. Covington was granted leave to reopen his bankruptcy case to pursue a motion for civil contempt for violation of the discharge injunction. Following an evidentiary hearing with documentary evidence, the Court granted Mr. Covington's motion and set a hearing to consider damages. For the reasons that follow, the Court awards Mr. Covington nominal compensatory damages of $100 for litigation costs only. This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), made applicable by Fed. R. Bankr. P. 7052, and as applied to contested matters by Fed. R. Bankr. P. 9014(c).

**BACKGROUND**

The relevant facts are derived from the testimony presented at the evidentiary hearings and are mostly undisputed.  The Court also takes judicial notice of the docket in the bankruptcy case and the adversary proceeding.  *See Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989).

I.  **Procedural History**

Mr. Covington filed a voluntary chapter 7 bankruptcy case on March 3, 2022, and listed ILAW as a creditor.  Notice of the filing was mailed to ILAW at 4436 Industrial Drive, Alton, Illinois 62002-5938, on March 6, 2022.  Mr. Covington received his discharge on June 1, 2022; that order was mailed to ILAW on June 3, 2022.  The bankruptcy case was closed a few days later.

Notwithstanding the automatic stay imposed by his March 2022 bankruptcy filing and the discharge injunction that took effect in June 2022, ILAW continued to send Mr. Covington bills in April, May, June, and July of 2022, seeking payment of pre-petition charges.  The post-discharge collection attempts occurred even after ILAW counsel sent an email to an Administrative Law Judge dated June 16, 2022, acknowledging the company's receipt of Mr. Covington's discharge order.  Finally, around August 17, 2022, ILAW sent Mr. Covington a bill reflecting a zero balance left on the pre-petition account and also created a new account with only post-petition charges.

About a week later, Mr. Covington commenced this adversary proceeding, alleging that ILAW had violated the automatic stay (Count I) and the discharge injunction (Count II).  At the initial status hearing on the complaint, both the Court and ILAW counsel questioned whether stay violations could be pursued in a closed bankruptcy case, particularly where the discharge

injunction is in effect.  Thereafter, Mr. Covington reopened the bankruptcy case and filed a motion for civil contempt asserting that ILAW violated the discharge injunction by billing him for pre-petition amounts after entry of the June 2022 discharge order.[1]

Both parties presented evidence at the contested contempt hearing on March 2, 2023. The Court pointed out that there was nothing in the bankruptcy docket to suggest that ILAW had never received notice of the filing or the discharge order. and the record was filled with undisputed evidence of repeated violations of the automatic stay and the discharge injunction. Accordingly, ILAW was held in civil contempt for violating the discharge injunction, with a damages hearing scheduled to follow.

## II.    **Evidentiary Hearing on Damages**

On March 30, 2023, the parties presented damages testimony regarding both the unresolved adversary count about the automatic stay as well as the discharge injunction.  The Court noted that the damages analysis for stay violations under 11 U.S.C. § 362(k) and discharge injunction violations under 11 U.S.C. § 524(a) was based on similar factors.  Nevertheless, the Court reserved ruling on whether the stay violations were viable claims.

ILAW presented testimony from Kari Bettorf, a billing manager whose team processes collections.  She explained that once ILAW is notified that a customer has filed for bankruptcy, whether through written mailings or telephone calls, their internal procedure provides that ILAW will close the current account, write off the pre-petition amounts, and open a new account for post-petition charges.  Customers should then receive a new billing statement reflecting the elimination of pre-petition charges.  This process usually happens about 1-3 days after ILAW

---

[1] Because the adversary complaint was not limited to stay violations, but also included the discharge injunction violation, the motion in the bankruptcy case and the adversary complaint have been carried forward together for resolution.

receives notice of the bankruptcy filing.  Ms. Bettorf explained that ILAW processes about 160 bankruptcy notices per year.

With respect to Mr. Covington, Ms. Bettorf concedes that procedure was not followed. She did not see any notations in his customer billing records of calls or faxes from him about the March 2022 filing, and she also could not tell when/if the bankruptcy filing notice was received at ILAW offices.  But she did acknowledge that his discharge order was received in the Alton office on June 6, 2022, and forwarded to her team for processing on June 7, 2022.  A day later, she assigned an agent to remove the pre-petition amounts and create a new account for Mr. Covington.  However, the agent incorrectly marked the task as completed when it was not done. Ms. Bettorf attributed the mistake to human error rather than intentional wrongdoing.  Sometime in August 2022, the oversight was realized and finally corrected.

Mr. Covington testified as follows about his claims for damages.  He sought compensatory damages of $217 for litigation expenses including court costs, postage, copying, and research.  Included within that request was monetary losses from missed work opportunities because he did not feel comfortable pursuing a job while litigating this matter.  But Mr. Covington admitted that he was never forced to turn down any job offer or miss any scheduled work due to his court case.  Next, Mr. Covington sought emotional distress damages of $10,000 for depression, sleepless nights, and upset stomach caused by the ongoing litigation.  He did not seek medical care for any of these conditions, though.  Finally, Mr. Covington sought punitive damages of $10,000.  In his post-hearing brief, he reiterated these contentions but did not attach any receipts or itemization for out-of-pocket costs.  He also asked the Court to clear his ILAW account of $1,124 in past due post-petition water charges.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(1).

## DISCUSSION

The issue before the Court is the appropriate remedy to be assessed against ILAW for violating the discharge injunction. In undertaking this inquiry, the Court is guided by the notion that these proceedings "are coercive and remedial, not punitive in nature and sanctions for civil contempt are designed to compel . . . compliance with an existing court order or to compensate . . . for losses sustained as a result." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). Although Mr. Covington seeks over $30,000 in damages here, after reviewing the record, testimony, and post-trial submissions, the Court finds a nominal damage award of $100 is more appropriate, which ILAW can pay to Mr. Covington either by mailing him a check or issuing a credit to his new water bill account which remains overdue for post-petition charges that were not affected by the discharge injunction.

A related and unresolved point here is whether the stay violations are actionable too. In his post-trial brief, Mr. Covington lists court costs of $84 and punitive damages of an additional $10,000 for stay violations. At the Court's invitation, the parties discussed the issue in their briefs, with ILAW arguing that the stay violations cannot be considered and Mr. Covington contending the opposite. However, the Court has determined that it need not resolve whether the stay violations can be litigated, as no further damages are warranted, since any remedy is included within the nominal amount being awarded for the discharge injunction violation.

Under 11 U.S.C. § 524(a)(2), a discharge becomes a court ordered injunction, and parties who fail to adhere to it are subject to being sanctioned. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to coerce the defendant into compliance with an injunction or compensate the complainant for losses stemming from the defendant's noncompliance with an injunction.") (internal citations omitted). Actual damages may include damages for emotional distress, which can be just as real and sometimes far more serious than damage to property interests. *Nibbelink v. Wells Fargo Bank, N.A. (In re Nibbelink)*, 403 B.R. 113 (Bankr. M.D. Fla. 2009) (emotional distress damages for assessing invalid fees during chapter 13 case and falsely reporting mortgage as delinquent on credit report); *but see Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313 (11th Cir. 2015) (emotional distress damages must be significant and causally connected to discharge violation). Punitive damages are reserved for "violations of the discharge injunction . . . taken with either malevolent intent or a clear disregard of the bankruptcy laws . . . it is not sufficient to merely show that the actions were deliberate." *In re Vazquez*, 221 B.R. 222, 232 (Bankr. N.D. Ill. 1998).

With these principles in mind, the Court turns to the damages sought. Creditors are obligated to maintain procedures to ensure that they do not violate section 524 and may be held liable for damages and attorney's fees if they do not. *McLean v. Green Point Credit LLC (In re McLean)*, Nos. 12-11045-WRS, 13-1008-WRS, 2013 Bankr. LEXIS 4743, at *10 (Bankr. M.D. Ala. Nov. 8, 2013) (technologically savvy creditor should have computer systems that would prevent attempts to collect discharged debts*); see also Faust v. Texaco Refining and Mkt'g, Inc. (In re Faust)*, 270 B.R. 310 (Bankr. M.D. Ga. 1998) (awarding debtor damages for emotional

stress and attorney's fees when creditor with notice of bankruptcy referred claim to collection agencies after discharge).

The Court heard credible testimony from ILAW manager, Ms. Bettorf, about the company's standard procedures for handling the accounts of customers who file for bankruptcy. Those clearly were not followed here, but the Court finds the failure to do so was due to error, not a willful disregard of court orders. To be clear, it should not have taken ILAW months to remove the pre-petition charges from his account, but Mr. Covington has not shown that he was harmed by this minor delay. Indeed, Mr. Covington mistakenly assumes that obtaining a "fresh start" means that he is not required to pay *any* water bills for post-petition service. In that regard, he is wrong. Thus, recovery for the $1,124 to clear his current account with ILAW is not appropriate. *In re Ludkowski*, 587 B.R. 330, 339 (Bankr. N.D. Ill. 2018) (clarifying that a debtor's fresh start only covers debts pre-petition). A discharge "discharges the debtor from all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b). That would be the date the petition was filed, not the day the discharge is entered. *In re Miller*, 268 B.R. 826, 827 (Bankr. N.D. Ind. 2001) ("In a voluntary case, the order for relief occurs at the moment of filing.").

Mr. Covington would typically be allowed to recover out-of-pocket expenses such as court costs, postage, and copying. He claims to have spent $217 but failed to provide any receipts, invoices, or accounting to support this number. The Court notes that both the filing fee for the adversary proceeding and the reopening fee for the bankruptcy case were waived. Nevertheless, given that Mr. Covington likely expended some money on copying and mailing documents while pursuing this litigation, the nominal amount of $100 will be awarded.

Mr. Covington seeks damages of $10,000 for emotional harm due to frustration and other physical stresses, as well as missed job opportunities, but none of those are warranted here. Claims for emotional damages tend to raise concerns due to their ease of being manufactured. *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). As such, the injured party must "show demonstrable emotional distress, not just point to circumstances. . . which might support an inference of such injury." *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000). Mr. Covington did not seek medical care for his symptoms, nor did he turn down job opportunities or lose wages. As such, he has not offered any supporting evidence for such an award.

Finally, Mr. Covington seeks $10,000 in punitive damages but that too is not demonstrated by these facts. Punitive damages are reserved for particularly egregious conduct. *See Romanucci & Blandin, LLC v. Lempesis*, No. 16 C 9710, 2017 WL 4401643, at *7 (N.D. Ill. May 4, 2017) (compiling cases). As the Court explained above, the record does not reflect that the late processing of Mr. Covington's account was based on malicious intent by ILAW or even a disrespect for the bankruptcy laws. This was a mistake, plain and simple. Indeed, having watched Ms. Bettorf testify and had a chance to assess her credibility, the Court finds that ILAW has an adequate system in place for handling customer bankruptcy filings. Mr. Covington has not presented his own evidence that suggests otherwise. Accordingly, no further injunctive relief is warranted.

## CONCLUSION

For the foregoing reasons, Mr. Covington is awarded nominal damages of $100 for litigation expenses only, to be paid by ILAW via a mailed check or credit to his current water account, in resolution of the motion for civil contempt.  All other requested damages are denied, and all pending matters in the bankruptcy case are moot.  ILAW shall file proof of compliance with this Order within 14 days.  Afterwards, the bankruptcy case may be re-closed.

Concerning the adversary complaint, the relief afforded to Mr. Covington on the civil contempt motion is more than adequate to address the mishandling of his account by ILAW pre-discharge and post-discharge.  Accordingly, judgment will be entered in favor of ILAW on Counts I and II.  A separate order judgment order will be entered consistent with this decision.

**DATED**: May 19, 2023                         **ENTERED**:

_LaShonda A. Hunt_
LaShonda A. Hunt
United States Bankruptcy Judge